The **LUBRIZOL CORPORATION,**
Plaintiff–Appellant,
Cross–Appellee,

v.

**EXXON CORPORATION,**
Defendant–Appellee,
Cross–Appellant,

**Charles R. Evans, Richard D. Lower, and GATES Data Center, a joint venture, Defendants–Appellees.**

No. 88–2086.

United States Court of Appeals,
Fifth Circuit.

May 4, 1989.

Erwin N. Griswold, Washington, D.C., Carol Vance, Houston, Tex., Barry L. Springel, James C. Sennett, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Joseph W. Bauer, The Lubrizol Corp., Wickliffe, Ohio, for plaintiff-appellant, cross-appellee.

J. Donald Bowen, Houston, Tex., for Evans and Lower.

Charles Alan Wright, Austin, Tex., Richard Miller, W. Robert Brown, K.C. Johnson, John M. Baumann, Jr., Grace C. Yeh, Lynn M. Klafehn, Houston, Tex., for Exxon Corp. and Gates Data Center.

Before THORNBERRY, KING, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Lubrizol commenced this diversity action for fraud against its occasional nemesis Exxon, two Exxon employees and an entity called GATES Data Center because it believed that confidential Lubrizol information had been mis-handled by the defendants. Defendants' fraud was alleged to be contained in affidavits and statements made during the pendency of litigation between Lubrizol and Exxon in New Jersey federal district court. We essentially conclude that the matters here in dispute were settled along with the rest of the New Jersey lawsuit and that Evans and Lower may assert claim preclusion based on the judgment in that action. We affirm summary judgment on Lubrizol's claims against Exxon, Evans and Lower and remand for further factual development with respect to GATES Data Center.

## BACKGROUND

According to Lubrizol, this is the story of the lawsuit that did not die.[1] In 1982, Lubrizol sued Exxon in a New Jersey federal district court for infringement of Lubrizol's patents covering fuel additives, lubricants and other petroleum products. Because of the sensitive and confidential nature of much evidence in the case, a protective order was entered governing access to the parties' "Restricted Items" revealed during litigation. Briefly, such "Restricted Items" were to be maintained on premises under the control of outside counsel or each party's in-house law counsel, and, apart from necessary in-house clerical

personnel, only attorneys, outside consultants, outside CPA's and certain retired employees of the parties were allowed to review the materials.

Exxon entered some of Lubrizol's "restricted" information on computers at a Clear Lake, Texas facility managed by Appellee Charles Evans, an Exxon employee. Appellee Lower, an Exxon attorney, was one of Evans' supervisors. The facility was used by the Exxon law department to process information for Exxon litigation and, more significantly, to do the same for litigation involving GATES participants. GATES was an entity formed by *G*ulf, *A*moco, *T*exaco, *E*xxon, and *S*hell to share the cost and technology of litigation data processing for an administrative proceeding.

In February 1984, Lubrizol requested sanctions for violation of the protective order when it learned that Exxon had placed its "restricted" information in a computer, even before it learned of the existence of GATES. Exxon responded with the affidavits of Evans and Lower, denying a violation of the protective order. At the court's suggestion, Lubrizol hired two computer experts to visit Evans and Lower at the Clear Lake facility and discuss the integrity of the computer system. Exxon failed to reveal its part in the GATES venture.

When Lubrizol learned about GATES through a declaration of Evans filed in another lawsuit between Shell and Union Carbide, it renewed the motion for sanctions alleging that Lubrizol's restricted information had been exposed to the other four GATES participants. Lubrizol also alleged that Evans' affidavit contained false information and that he and Lower had misled Lubrizol's experts. Lubrizol sought equitable and compensatory relief. Exxon filed additional affidavits of Evans and Lower, seeking to explain that Exxon alone operated the Clear Lake facility and processed information for GATES and for other Exxon litigation, and thus, only its

---

1. Our statement of facts derives from uncontested propositions appearing in the trial court record.

employees had access to Lubrizol's "restricted" information.

A hearing was set on the motion September 24, 1984. Lubrizol and Exxon began settlement negotiations and requested that the court postpone the hearing. On September 27, the parties executed a settlement agreement, and the court dismissed the New Jersey case with prejudice the next day. Lubrizol contends, however, that the dispute over unauthorized access to its "restricted" data (the "computer dispute") was reserved and not embodied in the settlement agreement and dismissal.

On May 8, 1985, Lubrizol filed this diversity case in Houston against Exxon, Evans, Lower and GATES alleging common law fraud. The complaint alleges *inter alia* that the Evans and Lower affidavits filed in New Jersey contained false statements and that the two men made misrepresentations to Lubrizol's experts. The fraud was designed to conceal Exxon's violation of the New Jersey protective order and the continuing vulnerability of Lubrizol's confidential information to unauthorized retrieval by all of the GATES participants, who actually or potentially compete with Lubrizol. This litigation, like that which preceded it, has been acrimonious.

Exxon, Evans and Lower moved to dismiss this case on grounds of settlement and release or *res judicata*.[2] The district court converted this motion into one for summary judgment and originally denied it because it found the settlement agreement ambiguous and because it appeared that the same rights and duties were not at issue or litigated before the New Jersey court.

Trial commenced for what had been represented to the court as a six-week battle. Lubrizol's second witness was one of its

general counsel, J. Walter Adams. Adams testified that the attorneys' fees incurred in connection with the computer dispute in the New Jersey case were settled and dismissed, but that $40,000 in expert fees were not settled and dismissed. At that point, the district court interrupted the testimony and reexamined its earlier denial of summary judgment.

The district court then ruled that summary judgment should not have been denied. The court dismissed Lubrizol's complaint against all defendants for lack of subject matter jurisdiction and, alternatively, granted the defendants' motions for summary judgment. The district court also dismissed, for lack of subject-matter jurisdiction, an Exxon counterclaim that Lubrizol had breached the New Jersey court's protective order when it disclosed Exxon's restricted information to attorneys representing it in this litigation. These orders it certified as a final judgment pursuant to Fed.R.Civ.Proc. 54(b) to enable immediate appeal.[3]

## I. SUBJECT MATTER JURISDICTION OVER LUBRIZOL CLAIM

■ We may easily dispose of the district court's ruling that it lacked subject matter jurisdiction over Lubrizol's claims against Exxon, Evans, Lower and GATES. The rejection of subject matter jurisdiction depended upon two steps: (1) recharacterizing Lubrizol's fraud claim as a motion for civil contempt for the violation of the New Jersey protective order, and (2) determining that only the New Jersey court could exercise jurisdiction over a contempt proceeding to enforce its protective order. The latter proposition is sound, *see Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir.1985) *cert. denied*, 474 U.S. 1056, 106

---

**2.** Later, GATES filed a motion for summary judgment on these same grounds.

**3.** The court denied Lubrizol's motions to dismiss Evans' and Lower's defamation counterclaims and Exxon's counterclaims for fraud. Concerning the Exxon claim for breach of the covenant not to sue contained in the New Jersey settlement agreement, the court also denied dismissal but recognized that Exxon's damages would consist almost entirely of attorneys' fees incurred in the present case. Because the availability of fees as damages depends upon contested propositions of New York law, the court certified its refusal to dismiss this counterclaim for a § 1292(b) interlocutory appeal. We declined to accept the certification.

S.Ct. 794, 88 L.Ed.2d 771 (1986),[4] but the former one is not.

■ Lubrizol invites us to differentiate its common law fraud claim from a contempt motion because of their differing standards of proof, elements of proof, damages and potential for injunctive relief. Exxon's brief asserts, without citation of authority, that if the "relevant" facts allege a violation of the New Jersey protective order, the Houston court lacks subject matter jurisdiction. We, however, find that the alleged facts comprising Lubrizol's fraud claim are distinct from those which might have given rise to a claim for breach of the protective order. Although isolated statements in its complaint mention Exxon's representations or knowledge in connection with the issuance of the protective order, we believe the gist of Lubrizol's fraud claim is contained in the following operative paragraphs of the pleading:

> 11. Both Evans and Exxon knew that loading Lubrizol's confidential information onto a computer system controlled and accessed by five major oil companies was wrongful, a violation of the Protective Order, and an invasion of Lubrizol's legally protected rights with respect to the confidential information. In order to conceal this wrongful conduct, Evans, on behalf of Exxon, devised with Lower and Exxon a scheme to defraud Lubrizol and to maintain GATES' control over Lubrizol's confidential information in contravention of Lubrizol's rights.
>
> 12. In furtherance of this scheme as a continuing fraud, and with the knowledge of the other participants in it, Evans executed an affidavit on February 27, 1984, which was intended to convince Lubrizol and the New Jersey Court that the computer onto which Lubrizol's confidential information had been loaded was on the premises of and under the exclusive control of the Exxon Law Department. Exxon sent copies of the affidavit to Lubrizol. A copy of the executed affidavit of Defendant Evans is attached hereto as Exhibit "B."

> \*    \*    \*    \*    \*    \*

> 16. In furtherance of this scheme to defraud and with the knowledge of the other participants in it, Defendant Lower, acting on behalf of Exxon, executed an affidavit on February 27, 1984, which had the same objective as the Evans affidavit.

> \*    \*    \*    \*    \*    \*

This pleading reflects Lubrizol's obvious goal of stating a fraud claim separate and apart from the agreement that underlay the parties' protective order.

In an analogous vein, the Supreme Court has observed that "the plaintiff is master of the complaint," and may "by eschewing claims based on federal law, choose to have the case heard in state court." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 398–99, 107 S.Ct. 2425, 2433, 96 L.Ed.2d 318 (1987). As the plaintiff may elect to plead a non-removable case, so might Lubrizol choose to plead fraud rather than contempt in seeking relief for the appellees' alleged misuse of its confidential information. At first blush, this result may appear to encourage forum-shopping and forum-splitting during particularly contentious litigation, for opponents can readily describe each other's trial tactics as fraudulent. We believe any such tendency is counterbalanced by the second court's ability to recharacterize the crux of the allegations as merely a breach of the first court's orders and by the second court's discretion to transfer such harassment litigation, however it may be described by the plaintiff, back to the original forum.[5] 28 U.S.C. § 1404(a).

---

**4.** *See also United States v. Corn,* 836 F.2d 889, 892 (5th Cir.1988); *Dunham v. United States,* 289 F. 376 (5th Cir.1923).

**5.** Lubrizol maintains that it filed this suit in the Southern District of Texas in an abundance of caution to assure personal jurisdiction over Evans, Lower and GATES. We do not understand this reasoning. Since Lower and Evans are alleged to have committed torts—filed fraudulent affidavits—in New Jersey, personal jurisdiction over GATES would have been the only impediment, if such it was, to the jurisdiction of the New Jersey district court. *See Waffenschmidt v. Mackay,* 763 F.2d at 714–717. In any event, the district court was never urged to consider a motion to transfer this action to New Jersey.

As counsel for Exxon essentially conceded in oral argument before us,[6] we conclude that subject-matter jurisdiction over Lubrizol's complaint was not lacking.

## II. SETTLEMENT AND RELEASE

Lubrizol's approach regarding the settlement agreement is to try to introduce enough extrinsic evidence to make the agreement seem ambiguous. The district court excluded some of this evidence based on the parol evidence rule. Lubrizol argues that the district court erred, but that depends on the proper application of the rule.

■ The parol evidence rule bars evidence that is introduced to vary or contradict the terms of an integrated contract such as this one. 3 A. Corbin, Corbin on Contracts § 453, at 130 (1960). The settlement agreement is governed by New York law, hence, we are governed by this Court's *en banc* decision in *Broad v. Rockwell International Corp.*, 642 F.2d 929, 946–947, 948 (5th Cir.) (*en banc*), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981), interpreting New York law on the use of extrinsic evidence to prove the terms of a contract:

> The interpretation of an unambiguous contract provision is a function for the court rather than for a jury, and matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument.
>
> A court may not rewrite a term of a contract by "interpretation" when that term is clear and unambiguous on its face. In interpreting the contract, a court must be concerned with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote.
>
> \* \* \* \* \* \*
>
> As a matter of law, be it the law of New York or any other jurisdiction with which we are acquainted, a contract either is or is not ambiguous. It either does or does not adequately demonstrate the intent of the parties from its own four corners.... [A]nd because it is a question of law, we review the district court's decision with the full freedom to substitute our own judgment for that of the court below.

(citations and footnote omitted)

According to *Broad*, our first and primary recourse is to careful analysis of the settlement agreement for possible ambiguity. We further understand *Broad*, contrary to Lubrizol's argument, to limit the use of extrinsic evidence in establishing the context of a contract where the contract expresses the parties' intent on a subject.[7] We are confident that *Broad's* heavy emphasis upon the contractual language chosen by the parties represents a particularly sound basis for contract interpretation in this case. The settlement agreement is a type of contract whose formation and goals are familiar to the court, and the parties were sophisticated and represented throughout by skilled counsel.

Viewed as a whole, the settlement agreement resolved the entire New Jersey lawsuit while preserving the parties' freedom to continue pending litigation in Ohio and Texas and reserving other issues to each of them. No limits were placed on the comprehensiveness of the settlement with respect to the New Jersey suit, nor was the

---

**6.** Exxon never questioned the jurisdiction of the district court until Lubrizol challenged the district court's jurisdiction to hear Exxon's counterclaim. When asked at oral argument if the district court actually lacked subject matter jurisdiction, Exxon's counsel stated that "although [the district court] characterizes [the issue in terms of] subject matter jurisdiction, I would be more inclined to say that [the issue] is the proper exercise of discretion of the district court."

**7.** Lubrizol also contends that its parol evidence of Dr. Hsu's (Lubrizol) conversations with Mr. Phillips (Exxon) could be introduced to "explain" "unambiguous" terms of the parties' settlement agreement. Because Lubrizol's case depends upon a conclusion that the settlement agreement is ambiguous, this justification for parol evidence is too contradictory of Lubrizol's basic position to be credited. *Broad*, moreover, cautions against "interpreting" a contract, presumably by means of extrinsic evidence, when the contract is unambiguous on its face.

computer dispute even referenced, much less explicitly removed from the ambit of the settlement agreement. Thus, the introductory "whereas" clauses identify the "consolidated New Jersey action" and state that the parties are desirous of settling the action so that it will be "terminated." Paragraph 2 annexes a proposed form of stipulated dismissal, later entered by the court, which dismissed "the captioned [New Jersey] action, including *all* claims and counterclaims of any party, with prejudice." (emphasis added). Paragraphs 4.01 through 4.04 express the parties' releases and non-assertions of matters contained in the New Jersey action while they exclude from the settlement the Texas and Ohio lawsuits, Lubrizol's rights under enumerated patents and Exxon's defenses respecting such patents. (Paragraphs 4.01 and 4.02 will be examined closely below.) Paragraph 7 of the agreement provides that it will remain confidential except that either party may announce an "amicable conclusion" of the New Jersey action by Exxon's payment of an unspecified sum to Lubrizol. Paragraph 7 also contains an integration clause and prohibits any modification, amendment or waiver of any provision of the agreement without a formally executed document.[8]

Seeking to overcome the facial completeness with which the settlement agreement ended the New Jersey litigation, and to demonstrate ambiguity, Lubrizol focuses on paragraphs 4.01 and 4.02, which state in pertinent part:

> 4.01.... **Lubrizol ... releases, and will not assert, any claim or counterclaim made in the consolidated New Jersey action** (including Counts VII, VIII and IX filed May 18, 1984 but subsequently stricken), **or which could have been made based on any fact pleaded** or which was a compulsory counterclaim under Rule 13(a), FRCP, to any claim asserted by Exxon, or bring any suit,

action or proceeding on any such claim against Exxon (including its subsidiaries, divisions, successors and assignees) or against its past, present or future customers (direct or indirect) ..., **including without limitation:** [specific licensing agreements and patents]

> 4.02. Notwithstanding the provisions of Paragraphs 4.01 and 5.02 of this Settlement Agreement, it is expressly understood that Lubrizol does not intend to waive or release, and does not waive or release but hereby reserves all claims against Exxon relating to:
>
> (a) The subject matter, claims or counterclaims, or transactions relating thereto, in the Ohio action or in the Texas action; or
>
> (b) [certain other patents]
>
> (c) Any one or more of its patents when the terms of the release and covenant of paragraph 5.02 do not apply.

(emphasis added)

Lubrizol argues in two ways that the release of "claims" in ¶ 4.01 is a narrow expression which could be understood, in light of the proffered parol evidence, to have excluded the computer dispute. We address each contention in turn.

First, according to Lubrizol, ¶ 4.01 released only claims "raised in the pleadings or claims which could have been made based on those same matters." Lubrizol asserts that the text refers to the Federal Rules of Civil Procedure (Rule 13(a)) as a means to distinguish between "claims" and "motions," obviously, because the computer dispute was raised in two "motions" before the New Jersey court. Moreover, this reference delineates "claims" as a term of art that refers only to the patent causes of action which spawned Lubrizol's New Jersey complaint.

---

**8.** Paragraphs 7.02 and 7.03 provide:

7.02. No modification, amendment or waiver of any provision of this Settlement Agreement shall be valid unless it is in writing and executed with the same formality as this Settlement Agreement.

7.03. Except as otherwise provided herein, including without limitation Article IV hereof, this Settlement Agreement supersedes the October 1966 Agreement and the May 1981 Agreement, and constitutes the sole and entire agreement between Lubrizol and Exxon with respect to such subject matter.

■ We cannot accept either the grammatical or linguistic underpinnings of this argument. The Federal Rules of Civil Procedure do not define claims pleaded as limited to those in complaints. Thus, if pleaded claims were the only ones released by the settlement agreement, there would still be reason to find that Lubrizol's computer dispute claim was pleaded in its renewed motion for sanctions, which sought attorneys' fees and injunctive relief. Moreover, we agree with Exxon that "any fact pleaded" modifies the phrase "which could have been made" rather than the previous clause concerning "any claim or counterclaim made." The effect of this construction is to release not only the claims actually raised by Lubrizol in the New Jersey action but also those which could have been made based on any fact pleaded. Because the facts pertaining to the computer dispute were published in pleadings filed by Lubrizol, its claims were released. In any event, "claim" was not defined by the settlement agreement. There is an air of unreality and irony about importing into this homely word [9] the status of a term of art when the parties did not do so and the Federal Rules of Civil Procedure were designed to eschew formalistic terminology. This air is too thin for us.

Lubrizol's second argument is no more appealing. Lubrizol asserts that whereas ¶ 4.01 releases claims made or which could have been made based on any fact pleaded in the New Jersey action, ¶ 4.02 preserves all claims against Exxon relating to the "subject matter, claims or counterclaims, or transactions relating thereto ..." in the Ohio and Texas lawsuits. Accordingly, the comparatively expansive language of ¶ 4.02 necessarily implies that ¶ 4.01 did not comprehensively release all the "subject matter" or "transactions" at issue in the New Jersey suit,[10] and the computer dispute was

reserved. Of course, had Lubrizol and Exxon so chosen, ¶ 4.02 would have been the vehicle for expressly reserving the computer dispute. As it is, we are not troubled by the differing language of ¶ 4.01 and 4.02. Both parties needed to prevent the New Jersey settlement from hampering their litigation efforts in Texas and Ohio. The combination of a broad reservation of rights regarding the other pending actions, with a release somewhat more narrowly tailored to the matters actually raised in the New Jersey action, accomplished this purpose. The discrepancy between ¶ 4.01 and ¶ 4.02 alone leads to no specific inference concerning the computer dispute. The real discrepancy is in the omission of the computer dispute altogether from ¶ 4.02.

■ We conclude that the settlement agreement is unambiguous insofar as it released any claim that Lubrizol might have brought against Exxon resulting from the computer dispute. Parol evidence prior to or contemporaneous with execution of the settlement agreement was properly excluded from the trial court's analysis. The issue remains whether post-settlement communications between the parties may be introduced to shed light on the scope of the settlement agreement. They may not.

Evidence of such communications was proffered to show that Exxon and Lubrizol officials continued discussing the security of the GATES computers intermittently for months after they settled the New Jersey litigation. Such discussions, in turn, allegedly fortify Lubrizol's contention that this matter was never settled. Because, disagreeing with Lubrizol's conclusion, we have found that the settlement agreement unambiguously concluded the computer dispute, such evidence of subsequent performance or modification runs afoul of the par-

---

9. "Claim" is defined by *Webster's Ninth New Collegiate Dictionary:*
   a demand for something due or believed to be due [insurance]; a right to something; a title to a debt; privilege, or other thing in the possession of another; an assertion open to challenge.

10. The breadth of the reservation of the "subject matter, claims or counterclaims and transactions" involved in the Texas and Ohio lawsuits conflicts with Lubrizol's oft-repeated statement that the settlement agreement applied only to patent and licensing disputes between the parties. The subject matter or transactions in Ohio and Texas could even arguably include other computer disputes.

ties' provision prohibiting oral modifications or waivers. *See* ¶¶ 7.02, 7.03 summarized *supra.*

*In fine,* the district court rightly construed the settlement agreement, and its provisions raise no genuine issue of material fact requiring a trial. Fed. Rule Civ. Proc. 56(c). Exxon was entitled to summary judgment based on the settlement.

## III.  RES JUDICATA DEFENSE OF EVANS, LOWER AND GATES

■ The district court granted summary judgment in favor of Evans, Lower and GATES on the basis of their res judicata defense. This determination rests upon "claim preclusion" or true "res judicata," rather than "issue preclusion", once generally referred to as "collateral estoppel." Issue preclusion does not apply because the computer dispute was not fully litigated in the trial court. *Hughes v. Santa Fe Intern. Corp.,* 847 F.2d 239, 240–42 (5th Cir. 1988). Claim preclusion, however, bars the parties to a prior proceeding or those in privity with them from relitigating the same claims that were subject to a final judgment on the merits by a court of competent jurisdiction. *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 869 (5th Cir.1984). We shall examine whether the four conditions outlined in *Southmark* for invoking claim preclusion are present in this case.[11]

Two of those conditions are undisputed. The New Jersey district court was a court of competent jurisdiction, and its dismissal was a final judgment on the merits. Whether the computer dispute was a "claim" made in New Jersey and whether Evans, Lower & Gates are "in privity" with Exxon and consequently may be regarded as the same party are the sticking points. Upon analysis, Lubrizol's arguments against the satisfaction of these conditions are unpersuasive.

■ Lubrizol asserts that its fraud claim is not the same as the patent claims disputed in the New Jersey action. We disagree for several reasons. First, claim preclusion applies not only to "causes of action" raised in pleadings, but also to claims which were raised, or could have been raised, as part of the same cause of action. *Aerojet–General Corp. v. Askew,* 511 F.2d 710, 715 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975) ("Looking beyond the pleadings to what could have been pleaded, however, is precisely what is required by the federal law of res judicata").[12] Second, we have already concluded that the computer dispute was raised in the New Jersey action,[13] was settled by the parties and was dismissed by that court. The settlement agreement covered all claims that "could have been made based on any fact pleaded ..." Because a claim for fraud could have been made based on the facts alleged in Lubrizol's Renewed Motion for Sanctions,

---

11. Contrary to Lubrizol's suggestion, the federal common law of res judicata applies in this diversity case. *Sidag Aktiengesellschaft v. Smoked Food Products,* 776 F.2d 1270, 1273 (5th Cir. 1985) (citing prior circuit precedent).

12. *See also* Restatement (Second) of Judgments §§ 17, 24 (1982); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4443 at 386–87 (1981):

> If it is clear that the parties agreed to settle claims that were not reflected in the original pleadings, preclusion may extend to claims that were not even formally presented. Preclusion is most apt to be denied as to new claims that are found not to lie within the terms of the settlement, but care must be taken since the parties may have meant to settle matters that on technical analysis seem to involve a new claim or cause of action.

(footnotes omitted)

13. The Renewed Motion for Sanctions alleged almost exactly the same facts now asserted against Evans, Lower and GATES, and it requested injunctive as well as monetary relief. Lubrizol asserts that it "proves nothing" to demonstrate that the Renewed Motion for Sanctions sought specific relief, as "every motion made to a court seeks some kind of relief." This is true. To hold, however, that some such motions are "claims" and others are "not claims" for purposes of preclusion by judgment would invite unbelievable confusion and uncertainty in the law as well as introduce the prospect that consent judgments would never really conclude a case. It is far better for the parties to a settlement explicitly to outline what, if any, areas remain open for future adjustment or litigation than for us to return to an archaic forms-of-action type approach to claim preclusion.

it fell within the Settlement Agreement. This conclusion, in turn, refutes Lubrizol's additional observation that claim preclusion does not bar claims—like its fraud claim—based on a transaction that occurred after suit was filed. *Cf. Dillard v. Security Pacific Brokers, Inc.,* 835 F.2d 607, 609 (5th Cir.1988). That general rule becomes inapposite in these circumstances.

The remaining question is whether the requisite identity of parties exists. Lubrizol initially pointed to the settlement agreement and New York law as establishing that Exxon and Lubrizol did not explicitly release GATES or Exxon's employees from liability, and that joint tortfeasors not included in the settlement may not be released from liability under state law. These facts led Lubrizol to conclude that a settlement agreement resulting in a consent judgment may not be invoked by a non-party to justify claim preclusion in favor of the non-party. To do so arguably extends the reach of the settlement agreement beyond its bargained-for scope.

Despite its surface appeal, this argument is mistaken, for the existence of a settlement agreement is in this case irrelevant to the operation of claim preclusion. Had Lubrizol obtained a judgment after trial against Exxon, and then filed the present action against Evans, Lower and GATES, the principles of claim preclusion would apply as they do now. In either situation, we return to the original question of the extent to which a non-party to the judgment may assert its conclusive effect.[14]

Our circuit has not yet addressed claim preclusion in a case where the parties who seek its benefit are related by vicarious liability to the defendant in the prior lawsuit. Yet, this is the crux of Lubrizol's case. Exxon breached the New Jersey protective order, provoking the computer dispute, only because Evans and Lower—as Exxon employees acting in the scope of their duties—engaged in the exact conduct of which Lubrizol now complains. Most other federal circuits have concluded that employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued. *See Fiumara v. Fireman's Fund Ins. Co.,* 746 F.2d 87, 92 (1st Cir.1984); *Lambert v. Conrad,* 536 F.2d 1183, 1186 (7th Cir.1976); *Lober v. Moore,* 417 F.2d 714 (D.C.Cir.1969); *Spector v. El Ranco, Inc.,* 263 F.2d 143, 145 (9th Cir.1959). *But see Morgan v. City of Rawlins,* 792 F.2d 975, 980 (10th Cir.1986). The doctrinal basis for these decisions has varied according to their fidelity to traditional mutuality or privity concepts, but they share a common practical thread. Where a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction in the first action; where there was a "special relationship" between the defendants in each action, if not complete identity of parties; and where although the prior action was concluded, the plaintiff's later suit continued to seek essentially similar relief—the courts have denied the plaintiff a second bite at the apple. *See, e.g., Gambocz v. Yelenscics,* 468 F.2d 837 (3d Cir.1972); *Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115, 1119-23 (S.D.N.Y.1986), *aff'd,* 822 F.2d 14 (2d Cir.1987); *Ruskay v. Jensen,* 342 F.Supp. 264 (S.D.N.Y.1972) (noting that the plaintiffs "were fully aware of the role played by the present defendants who were not parties to the earlier proceeding" when they settled their claims), *aff'd,* 552 F.2d 392 (2d Cir.1977), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54

---

**14.** We recognize that a tension could develop between the goals of res judicata and of enforcing settlements as the parties wrote them. The tension could result from adopting ever-broader applications of non-mutual claim preclusion. However, our circuit has not foresworn its reliance on mutuality or identity of parties as the standard criterion for claim preclusion, abetted by the concepts of privity and virtual representation. *See Benson & Ford, Inc. v. Wanda Petro-* *leum Co.,* 833 F.2d 1172 (5th Cir.1987). Although the instant case carries those concepts into the area of derivative relationships, it does not precisely fit our prior case law on privity or virtual representation. Nevertheless, we do not view this decision either as breaking with mutuality. Thus, it does not pose a danger of trenching upon the scope of the parties' New Jersey settlement.

L.Ed.2d 197 (1977); *McLaughlin v. Bradlee*, 599 F.Supp. 839, 848 (D.D.C.1984), *aff'd*, 803 F.2d 1197 (1986); *County of Cook v. MidCon Corp.*, 574 F.Supp. 902 (N.D.Ill.1983), *aff'd*, 773 F.2d 892 (7th Cir. 1985); *Spector v. El Ranco, Inc.*, 263 F.2d 143, 145 (9th Cir.1959).

We may adopt the practical result reached in those cases and similarly approve claim preclusion here. In so doing, however, we make no broad pronouncements about the doctrines of mutuality or privity in this circuit. It is enough for present purposes to decide that, whether considered an "exception" to mutuality,[15] or an "extension" of privity, *cf. Cahill*, 659 F.Supp. at 1120–21, the vicarious liability relationship between Exxon and its employees Evans and Lower, which forms the only asserted basis for Exxon's liability for the computer dispute, justifies claim preclusion.

Lubrizol relies on two of our decisions to support its claim that Lower and Evans may not benefit from the prior judgment. They are distinguishable. In *Sidag Aktiengesellschaft v. Smoked Food Products*, 776 F.2d 1270 (1985), the two actions were based on the same contractual provisions, but they arose from wholly independent acts of different defendants in different states. There was no formal relationship between the parties and no concert of action. The court's statement that identity of the parties is a prerequisite to the board bar of claim preclusion is understood in this context, and it was immediately qualified by implying that the argument for nonmutual claim preclusion is stronger when based on "derivative relationships." 776 F.2d at 1275 n. 4.

In *Nagle v. Lee*, 807 F.2d 435 (5th Cir. 1987), a sheriff and named deputy sheriffs sought to invoke an earlier judgment dismissing a claim against the sheriff and two "John Doe" deputies for want of prosecution. Our court dismissed the second suit against the sheriff but rejected the application of claim preclusion to the deputies.

807 F.2d at 440. As we noted, the plaintiff alleged that the deputy sheriffs committed specific torts against him, and he alleged that the sheriff was liable for negligence based on his knowledge that the deputy sheriffs were prone to violence. *Id.* at 437. Thus, different theories of liability underlay plaintiff's complaint against the sheriff and the deputies. The deputy sheriffs were not alleged to have acted within the scope of their employment. Most significantly, the sheriff could not be vicariously liable under § 1983 for the acts of his deputies. *Id.* at 440 n. 4. *Nagle* does not bear comparison with the present case.

Although we are convinced that Evans and Lower, as employees and agents of Exxon, may benefit from claim preclusion in the circumstances presented here, we cannot confidently reach the same result with respect to GATES. We do not know enough about GATES's relationship to Exxon to make that determination. There are contested issues of material fact with respect to GATES's status, including whether GATES is an entity subject to suit, which militate against summary judgment. Further discovery may elucidate whether GATES is a joint venture, an agent of Exxon, or in some other relationship that might permit the assertion of claim preclusion. Thus, we must vacate and remand for further proceedings in regard to GATES.

## IV. SUBJECT MATTER JURISDICTION OVER EXXON COUNTERCLAIM

Exxon's cross-appeal contends that the district court erred in dismissing its counterclaim alleging a violation of the New Jersey protective order. The counterclaim is based on Lubrizol's allegedly unauthorized use of Exxon's "restricted" information in order to file this case. Exxon argues that if the district court does not lack subject matter jurisdiction over Lubrizol's claim, then it erred in dismissing Exxon's counterclaim.[16] Such a proposition does not necessarily follow. Exxon's counterclaim explicitly seeks relief for a viola-

---

15. *See generally* C. Wright, A. Miller & E. Cooper, *supra*, §§ 4463–64.

16. In its reply brief, Lubrizol argues that Exxon's admission that it believes the district court was correct in dismissing the case against it for

tion of the New Jersey protective order. Although Exxon also seeks punitive damages, which would not be available in a proceeding for civil contempt, that alone cannot convert its counterclaim for enforcement of the protective order into an independent cause of action. We are aware of no basis upon which a district court may assert subject matter jurisdiction over violations of orders issued in other federal courts. On the contrary, we have held that, "It is the Court whose judgment or order has been defied which must try the contempt and pronounce judgment." *Dunham v. United States*, 289 F. 376, 378 (5th Cir.1923). The New Jersey district court needs no independent basis of subject matter jurisdiction because "[c]ourts possess the inherent authority to enforce their own injunctive decrees." *Pierce v. Vision Investments, Inc.*, 779 F.2d 302, 309 (5th Cir. 1986), *quoting Waffenschmidt*, 763 F.2d at 716. Thus, the proper forum to hear this Exxon counterclaim is the New Jersey district court. We therefore affirm the district court's dismissal of Exxon's counterclaim alleging a violation of the protective order.

For the above reasons, the district court's judgment is AFFIRMED in part, and VACATED and REMANDED for further proceedings in regards to GATES.

lack of subject matter jurisdiction renders Exxon's cross-appeal frivolous. Lubrizol seeks sanctions for damages and double costs. This request is disingenuous, and we deny the relief. Exxon's cross-appeal is an argument in the alternative and cognizable as such.