**WEST TRAVIS COUNTY PUBLIC UTILITY AGENCY, Appellant**

v.

**TRAVIS COUNTY MUNICIPAL UTILITY DISTRICT NO. 12, Appellee**

NO. 03-16-00880-CV

Court of Appeals of Texas, Austin.

Filed: August 29, 2017

Rehearing Denied January 3, 2018

Mr. Jose E. De La Fuente, Mr. James F. Parker, III, Mr. David Klein, Lloyd Gosselink Rochelle & Townsend, P.C., 816 Congress Avenue, Suite 1900, Austin, TX 78701, for appellant.

Ms. Mary Byars, Ms. Jane M. N. Webre, Scott Douglass & McConnico LLP, 303 Colorado Street, Suite 2400, Austin, TX 78701, for appellee.

Before Justices Puryear, Pemberton, and Goodwin

## OPINION

David Puryear, Justice

In this appeal we must determine whether the Legislature's waiver of sovereign immunity as codified in the Texas Local Government Contract Claims Act (the Act), *see* Tex. Loc. Gov't Code §§ 271.151, .152, extends to legal claims arising from a wholesale water-services contract wherein the main provision of services flows *from* a governmental entity *to* a municipal water district (MUD) but wherein the MUD has also agreed to install and convey to the governmental entity a water meter to enable the MUD's water use to be accurately measured and billed. We hold that the Act's waiver of immunity does not extend to the contract and, accordingly, reverse the trial court's order denying the plea to the jurisdiction of the West Travis County Public Utility Agency (the Agency), grant the plea, and render judgment dismissing the claims of the Travis County Municipal Utility District No. 12 (MUD 12) for want of jurisdiction.

## BACKGROUND [1]

In 2008, the Lower Colorado River Authority (LCRA) and MUD 12 entered into a "Water Sale Contract" (more commonly referred to by the parties as the "Raw Water Contract") in which the LCRA agreed to provide MUD 12 with raw water from the Colorado River in exchange for specified payments. "To measure the amount of [raw] water" provided to MUD 12, the Raw Water Contract also required MUD 12 to install—at its own expense—a meter, subject to the LCRA's approval of design and location, and to maintain and repair the meter as required under the Raw Water Contract's terms. The Raw Water Contract called for an effective date of the last date of execution by both parties and was duly executed.

About a year later, the LCRA and MUD 12 entered into a second contract, the "Wholesale Water Services Agreement"— under which MUD 12 sued the Agency [2] and that allegedly waived the Agency's sovereign immunity—in which the LCRA agreed to provide MUD 12 with "wholesale services for the treatment of raw water and delivery of potable water" in exchange

---

1. We derive the background facts from the documentary and testimonial evidence admitted at the hearing on the Agency's plea to the jurisdiction.

2. The LCRA later assigned the Wholesale Water Services Agreement to the Agency, which is the governmental entity against which MUD 12 filed this legal action.

for MUD 12's agreement to pay for the services as provided in the contract. The Wholesale Water Services Agreement (the Services Contract) called for MUD 12's payment of each (1) a flat "Monthly Charge"; (2) a "Volumetric Rate" (based on the amount of potable water actually provided to MUD 12 as measured by a "Master Meter" to be installed by MUD 12 and accepted by the LCRA prior to the contract's effective date); and (3) a "Connection Fee" for each new retail water customer that MUD 12 acquired, with specified minimum payments for connection fees. The Services Contract specified that its term would be the same as that agreed to in the Raw Water Contract: 40 years, unless terminated by either party as specified in the contracts.[3] The Raw Water Contract remained in force, and the Services Contract "in no way modifie[d] or amend[ed] the Raw Water Contract, nor the obligations and rights contained therein except with regard to the maintenance, repair and replacement, as necessary, of the Master Meter."

With respect to the Master Meter—the fixture at the heart of this dispute—the Services Contract provided:

[MUD 12] shall install the Master Meter at or near the Delivery Point. The design, location and installation of the Master Meter is subject to prior review and approval by LCRA, which approval shall not be unreasonably withheld or delayed. LCRA acknowledges that timely review and approval of the plans for the Master Meter are necessary in order for [MUD 12] to begin providing service [to its retail customers] as contemplated by this Agreement. Accordingly, LCRA agrees to review the plans and either approve them or provide written com-

ments specifically identifying any required changes within ten working days of receipt of the plans. If LCRA fails to either approve the submitted plans or provide the written comments within this ten-day period, the plans will be deemed approved. After completion of installation of the Master Meter, [MUD 12] shall dedicate and convey the Master Meter (together with associated easements, rights-of-way, permits, licenses or appurtenances) to LCRA free and clear of any liens, claims and encumbrances and execute an appropriate document in form and substance reasonably acceptable to LCRA evidencing the dedication and conveyance. Thereafter, the Master Meter will be part of the LCRA system and LCRA will repair, maintain and replace the Master Meter.

Unlike the Raw Water Contract, which became effective upon both parties' execution of the document, the Services Contract provided that it would become effective only after the LCRA accepted the Master Meter:

"Effective date" means the date (i) this Agreement has been executed by both [MUD 12] and LCRA, (ii) LCRA has accepted the Highlands master meter and the 16-inch water line between LCRA's Highway 71 water line and the Highlands master meter and (iii) LCRA has provided a copy of its acceptance letter for the Highlands master meter and the 16-inch water line to [MUD 12].

Evidence admitted at the hearing demonstrates that MUD 12 spent over $100,000 to install the Master Meter in two concrete tanks approximately 20 feet deep, located at the end of the LCRA's 24-inch transmission main—a location that was not "convenient" for MUD 12 because it required

---

**3.** Both contracts specified that MUD 12 could terminate at any time after the expiration of five years with a six-month written notice.

extending its own transmission lines by about 2 miles beyond its usage point to reach LCRA's designated Delivery Point. As one of MUD 12's witnesses explained, "You go to the LCRA; they don't come to you."

In a proposed letter agreement from the LCRA to MUD 12, the LCRA enclosed (a) a letter accepting the completed Master Meter and (b) the "proposed" Services Contract, executed by the LCRA. MUD 12 indicated its acceptance of the Services Contract by signing the letter agreement and executing the Services Contract.

The parties then conducted business under the terms of the Services Contract—the Agency delivering potable water to MUD 12 and MUD 12 paying for such services—until a dispute arose concerning the rates that the Agency was charging.[4] MUD 12 filed this lawsuit against the Agency, contending that the Agency breached the Services Contract by charging MUD 12 "excessive fees" and "setting excessive rates that are not authorized and/or are prohibited" by the Services Contract. MUD 12 pleaded that the Agency's sovereign immunity was waived by the Act because of MUD 12's agreement in the Services Contract to provide "services" to the Agency in the form of installation and conveyance of the Master Meter. The Agency filed a plea to the jurisdiction, which the trial court denied after an evidentiary hearing.

## STANDARD OF REVIEW

■ Governmental immunity has two components: immunity from liability and immunity from suit. *Tooke v. Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). A governmen-

tal entity that enters into a contract waives its immunity from liability but retains its immunity from suit unless its immunity from suit is specifically waived by the Legislature. *Id.* Governmental immunity from suit deprives the trial court of subject-matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). A plea to the jurisdiction is a proper instrument to raise the issue of governmental immunity. *Id.* at 226. Whether a court has subject-matter jurisdiction is a question of law, and we review the trial court's grant or denial of a plea to the jurisdiction de novo. *Id.* When reviewing a grant or denial of a plea to the jurisdiction, we consider the plaintiff's pleadings, construed in favor of the plaintiff, and any evidence relevant to jurisdiction without weighing the merits of the claim. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

## DISCUSSION

■ The Agency, a public utility agency, is a governmental entity of the State of Texas. *See* Tex. Loc. Gov't Code § 572.052(c)(2). Thus, it is immune from suit unless its immunity is waived. *Tooke*, 197 S.W.3d at 332. MUD 12 argues that the Agency's immunity was waived under the Act. *See* Tex. Loc. Gov't Code § 271.152 (waiving sovereign immunity of governmental entity that enters into contract subject to Act). We must, therefore, determine whether the Services Contract is a contract "subject to" the Act—that is, whether the Services Contract is (1) a written contract (2) stating the essential terms of (3) an agreement for providing goods or services to a local governmental entity (4) that is properly executed on

**4.** Although not in the record, the Agency's brief cites to publicly available documents from the Public Utility Commission (Commission) regarding a rate case initiated by MUD 12 prior to the filing of this lawsuit, challenging the Agency's rates. The Agency's brief notes that the Commission upheld the rates and that MUD 12's appeal of the Commission's decision is currently pending in Travis County District Court.

behalf of the local governmental entity. *Id.* § 271.151(2). If we answer that question in the affirmative, we must then determine whether the remedies that MUD 12 seeks are recoverable under the Act. *See id.* § 271.153 ("The total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to . . . the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or accelerations . . . ."); *Zachry Constr. Corp. v. Port of Hous. Auth.*, 449 S.W.3d 98, 111 (Tex. 2014) (noting that Act does not waive immunity from suit on claim for damages not recoverable under section 271.153); *Tooke*, 197 S.W.3d at 346 (holding that immunity is not waived if plaintiff's claim seeks only damages for which recovery is excluded under Act, such as lost profits). A negative answer to either of these questions signifies that the Legislature has not waived the Agency's sovereign immunity and that the trial court improperly denied the Agency's plea to the jurisdiction.

The parties do not dispute whether the Services Contract meets the first and fourth requirements of the Act (that it be a written contract properly executed by the governmental entity). Rather, they dispute whether the Services Contract can reasonably be construed as "stating the essential terms of the [parties'] agreement for providing goods or services to" the Agency. *See* Tex. Loc. Gov't Code § 271.152(2). The Agency contends that the Services Contract does not meet the requirements of the Act because MUD 12's agreement to

install and convey the Master Meter did not constitute the provision of a "service" to the Agency; the services in the contract flowed in the wrong direction—from the Agency *to* MUD 12, in the form of water treatment and delivery; and any benefits the Agency received were, at most, merely indirect and attenuated.[5] *See Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 303 (Tex. 2014); *Partners Dewatering Int'l, L.C. v. City of Rio Hondo*, No. 13-13-00340-CV, 2015 WL 3637853, at *1–2 (Tex. App.—Corpus Christi June 11, 2015, pet. denied) (mem. op.). The Agency further contends that, even if installation and conveyance of the Master Meter could be deemed "services" under the Act, the Services Contract contains no agreement by the Agency to pay any amount to MUD 12 and, therefore, there is no "balance due and owed" to MUD 12 for the Master Meter and no waiver of immunity. *See Church & Akin*, 442 S.W.3d at 304–05 ("This lease agreement contains no terms in which the Water District agreed to pay Church & Akin any amount for its services, so there is no amount that is 'due and owed . . . under the contract."); *see also* Tex. Loc. Gov't Code § 271.153.

■ It is axiomatic that "a waiver of immunity must be clear and unambiguous," *Tooke*, 197 S.W.3d at 333; *see also* Tex. Gov't Code § 311.034 (immunity waivers must be "effected by clear and unambiguous language"), and that any ambiguity must be resolved in favor of retaining immunity, *see Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003). Statutes waiving governmental immunity are to be strictly construed. *See City of*

---

**5.** The Agency identifies MUD 12's own testimonial evidence in the record demonstrating that the meter is, in fact, of *no* benefit to the Agency because there is no hypothetical other

customer besides MUD 12 that the meter could serve and that the Agency has a monopoly with respect to the services it provides to MUD 12.

*Hous. v. Jackson*, 192 S.W.3d 764, 770 (Tex. 2006). It is within this framework that we consider the particular waiver at issue here.

 MUD 12 correctly notes that the agreement to provide services to the governmental entity "need not be the primary purpose of the agreement" between the parties, *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010), and that the term "services" has been construed "broad[ly] enough to encompass a wide array of activities . . . includ[ing] generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed." *Id.* However, we cannot read the meaning of "services" so broadly that the requirement is read completely out of the statute. Furthermore, such a broad reading of the term "services" is inconsistent and at odds with the overarching statutory and common-law mandates to strictly construe waivers of immunity and resolve ambiguities in favor of retaining immunity. *See* Tex. Gov't Code § 311.034; *Wichita Falls State Hosp.*, 106 S.W.3d at 697. Not every "benefit" received by a governmental entity operating within a contractual relationship with another party qualifies as a "service" under the Act. *See Church & Akin*, 442 S.W.3d at 303 (holding that plaintiff's operation of marina on property leased from county provided only indirect benefit to water district); *Partners Dewatering*, 2015 WL 3637853, at *1–2 (holding that where contract allowing plaintiff to operate liquid dewatering facility on premises of city-owned wastewater-treatment plant also required plaintiff to construct road on city's premises to permit plaintiff's trucks to access facility, road provided only indirect and attenuated benefit to city and did not waive immunity, although other provision of contract did, even though road

would likely have remained on city's property upon contract's termination). Instead, the governmental entity must in the first instance have a *right* under the contract to receive services—even under a broad interpretation of that term—because otherwise the benefits incidentally accruing to it would be too "indirect" and "attenuated" to bring the contract under the Act. *See Church & Akin*, 442 S.W.3d at 303; *Kirby Lake*, 320 S.W.3d at 839. As the supreme court has noted: "When a party has no right under a contract to receive services, the mere fact that it may receive services as a result of the contract is insufficient to invoke chapter 271's waiver of immunity." *Church & Akin*, 442 S.W.3d at 303.

 Here, the unambiguous language in the Services Contract reveals that the Agency had no contractual right to receive any services from MUD 12. The contracted-for right to receive services (water treatment and delivery) flowed in the *opposite* direction (from the Agency *to* MUD 12), for the express purpose of enabling MUD 12 to meet its own obligations to its retail customers. Even if installation and conveyance of the Master Meter could be deemed a "service" under a broad interpretation of the term, *see Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 327–28 (Tex. 2006) (holding that self-insurance fund members provide services to fund by virtue of their electing fund's governing board and, therefore, fund's sovereign immunity was waived with respect to member school district's insurance-coverage lawsuit), the Agency had no *right* under the Services Contract to receive that "service"—in fact, it was a condition precedent to the contract's formation. *See Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976) (noting that condition precedent to contract's formation oc-

curs where parties have agreed that contract will not be effective or binding until certain conditions occur, and no binding contract will arise until conditions specified have occurred); *Ricones v. Windberg*, 705 S.W.2d 846, 848 (Tex. App.—Austin 1986, no writ). The plain language of the Services Contract evidences the parties' intent that it not become effective until the Agency accepted the Master Meter and both parties signed the contract. The evidence in the form of the Agency's letter agreement accepting the meter and executing the Services Contract supports that interpretation. Had MUD 12 not installed the Master Meter—for whatever reason—there would be no Services Contract upon which to sue. MUD 12's installation and conveyance of the Master Meter to the Agency prior to the contract's effective date does not equate to a right of the Agency to enforce receipt of that, or any other, "service" under the in-force contract.[6]

 Moreover, the right to receive "services" must be expressly provided for in the written contract, *including* a statement of the "essential terms" for the provision of those services—as the Act unambiguously requires. *See* Tex. Loc. Gov't Code § 271.151; *Church & Akin*, 442 S.W.3d at 303. "[U]nder chapter 271, the terms of the written agreement are themselves the substance that determines whether immunity is waived. Unless the written contract includes the essential terms of an agreement to provide goods or services to the governmental entity, the waiver of immunity does not apply." *Church & Akin*, 442 S.W.3d at 303. One such "essential term" is the *amount* the governmental entity has agreed to pay the claimant for the "service." *See City of Hous. v. Williams*, 353 S.W.3d 128, 138–39 (Tex. 2011) (noting that while section 271.151(2) does not define "essential terms," supreme court has characterized them to be, among other things: time of performance, price to be paid, and service to be rendered); *Kirby Lake*, 320 S.W.3d at 838 (noting that "essential terms" of contract include names of parties, property at issue, and basic obligations) (citing *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006) (noting that Texas courts generally construe essential terms of contract to include "the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred")). Construing the provisions of the Act together, the supreme court has noted that "the waiver will typically apply only to contracts in which the governmental entity agrees to pay the claimant for the goods or services that the claimant agrees to provide to the governmental entity." *Church & Akin*, 442 S.W.3d at 303 (holding that lease at issue was not subject to Act because lease contained no terms in which water district agreed to pay plaintiff any amount for its marina-operation "services," which indirectly benefitted water district; rather, plaintiff agreed to pay water district for leasehold interest containing use restriction for any purpose other than operation of marina). MUD 12 has not identified any salient facts or persuasive argument that would remove the Services Contract from the umbrella of "typical" contracts cited in *Church & Akin* requiring an agreement by the governmental entity to pay the claimant. *See id.*

---

**6.** It is notable that pursuant to the Services Contract the design of the Master Meter was merely "subject to" the LCRA's approval and that, if the LCRA did not approve its design or identify any required changes within 10 days of its receipt of the plans, the design plans would be "deemed approved," indicating that the meter's purpose was simply to facilitate and measure the delivery of potable water to MUD 12 for its benefit.

The Services Contract is silent on two essential terms relating to MUD 12's "agreement" to provide meter-installation "services" to the Agency: price and time of performance. While not every contract that fails to specify the price to be paid for services is necessarily unenforceable due to this defect, *see David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008), the issue here is not the enforceability of the Services Contract but, rather, whether the contract meets the explicit requirements of the Act—specifically, its requirement that the written contract *state the essential terms* (e.g., price and time of performance) of the parties' services agreement. *See* Tex. Loc. Gov't Code § 271.151(2). By failing to state these two terms, we conclude that the Services Contract does not "state the essential terms" of an agreement by MUD 12 to provide services to the Agency and is not, therefore, subject to the Act. *See id.*

The Act's immunity language does not evince the Legislature's unequivocal intent to cover this particular contract, and we must resolve any uncertainties over legislative consent in favor of immunity.[7] Accordingly, we hold that the Legislature has not abrogated the Agency's immunity from suit under these circumstances.

## CONCLUSION

Under the Act, the Legislature has waived immunity for certain contract actions against local governmental entities. However, this dispute does not concern a contract subject to the Act, and we hold that the trial court improperly denied the Agency's plea to the jurisdiction. Accordingly, we reverse the trial court's order, grant the Agency's plea, and render judgment dismissing MUD 12's claims for lack of jurisdiction.

Concurring and Dissenting Opinion by Justice Pemberton

Bob Pemberton, Justice, concurring in part and dissenting in part.

Under the Texas Supreme Court's precedents guiding our construction of Local Government Code Section 271.152, the governmental immunity of West Travis County Public Utility Agency is waived with respect to claims for breach of its "Wholesale Water Services Agreement" with Travis County Municipal Utility District No. 12 by virtue of the District's conveyance of the "Master Meter" under the Agreement.[1] However, only the Dis-

---

7. Because we have determined that the Services Contract is not a contract subject to the Act, we need not consider whether the damages that MUD 12 seeks are recoverable under the Act. *See* Tex. Loc. Gov't Code § 271.153.

1. *See, e.g., Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010) (explaining that "services" as used in Section 271.152 "is broad enough to encompass a wide array of activities," "includes generally any act performed for the benefit of another," and holding that water and sewer facilities constructed for government entity sufficed); *id.* (deriving from *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivs. Prop./Cas.Joint Self-Ins. Fund*, 212 S.W.3d 320, 327 (Tex. 2006), the proposi-

tions that "[t]he services provided ... need not be the primary purpose of the agreement," nor does the claim have to be based on the portion of the agreement under which "services" or "goods" are provided); *id.* at 838 (explaining that "essential terms" as used in Section 271.152 "generally ... include 'the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred'" (quoting *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006))); *see also Zachry Constr. Corp. v. Port of Hous.*, 449 S.W.3d 98, 110–114 (Tex. 2014) (explaining that "the balance due and owed by the local governmental entity under the contract" as used in Section 271.153, which in turn limits scope of Section 271.152's waiver, need not be specified in the contract, but "is simply the amount of dam-

trict's claims for direct damages allegedly attributable to such breach, interest, and attorney's fees come within that waiver; the District's claim for specific performance remains barred.[2] Accordingly, I join in the Court's judgment only with respect to the District's specific-performance claim. I would otherwise affirm the district court's order.

ages for breach of contract payable and unpaid," and that "[d]irect damages for breach ... certainly qualify"); *Lubbock Cnty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.,* 442 S.W.3d 297, 305 (Tex. 2014) (while observing that absence of express agreement by governmental entity to pay for goods or services "may indicate that the claimant did not in fact agree to provide goods or services to the governmental entity," acknowledging that "a party may agree to provide goods or services in exchange for something other than payment").

2. *See* Tex. Loc. Gov't Code § 271.153(a) (permitting damages limited to "the balance due and owed," other amounts owed for change orders, "reasonable and necessary attorney's fees that are equitable and just," and "interest as allowed by law"); *cf. id.* § 271.153(c) (au-

thorizing amount of "[a]ctual damages, specific performance, or injunctive relief" in an adjudication under different provision of chapter governing certain contracts for sale or delivery of water); *see also City of El Paso v. Heinrich,* 284 S.W.3d 366, 370–73 (Tex. 2009) (clarifying that suits seeking equitable relief against governmental entities, not merely suits for money damages, generally implicate sovereign or governmental immunity); *City of New Braunfels v. Carowest Land, Ltd.,* —— S.W.3d ——, ——, 2017 WL 2857142, *5–7, 2017 Tex. App. LEXIS 6130, *14–18 (Tex. App.—June 29, Austin 2017, no pet. h.) (clarifying that statutory immunity waivers that specify remedies are limited to those forms of relief and cannot be applied in a so-called transitive manner to permit additional remedies).