In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00180-CV**
_____

**SAN JACINTO RIVER AUTHORITY, Appellant**

**V.**

**CITY OF CONROE, TEXAS AND CITY OF
MAGNOLIA, TEXAS, Appellees**

_____

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 19-09-12611-CV**
_____

**MEMORANDUM OPINION**

This is an interlocutory appeal of a trial court's order granting pleas to the jurisdiction based on governmental immunity. San Jacinto River Authority ("SJRA") filed this appeal to challenge the trial court's order granting the Appellees City of Conroe and City of Magnolia's ("the Cities") pleas to the jurisdiction.[1] In

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (permitting interlocutory appeals from rulings on a governmental unit's plea to the jurisdiction).

this appeal, we examine certain sections of Subchapter I of the Texas Local Government Code known as the Local Government Contract Claims Act ("the Act"), which set forth certain requirements for the adjudication of claims arising under written contracts with local governmental entities.[2] SJRA alleged that the Cities have breached certain contractual agreements with SJRA. The Cities alleged that the claims asserted by SJRA against them should be dismissed because they have governmental immunity from the claims, and the trial court agreed. SJRA argues that the waiver of immunity provision in section 271.152 applies, and that the trial court erred in granting the pleas to the jurisdiction. Because we conclude on the record before us that the suit involves allegations of both payment and performance defaults, and that SJRA failed to comply with a pre-suit limitation on the waiver of immunity contained in the statute, we affirm.

Background and Related Litigation

The underlying dispute between the parties relates to a Groundwater Reduction Plan ("GRP") and certain contracts ("GRP Contracts") or agreements executed between the Cities and SJRA, which have been discussed in other court opinions.[3] SJRA "is a legislatively created conservation and reclamation district

---

[2] *See* Tex. Loc. Gov't Code Ann. §§ 271.151-160.

[3] *See, e.g., City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 448 (Tex. 2020); *Lone Star Groundwater Conservation Dist. v. City of Conroe*, No. 09-18-00383-CV, 2019 Tex. App. LEXIS 1089 (Tex. App.—Beaumont Feb. 14, 2019, no pet.) (mem. op.); *Lone Star Groundwater Conservation Dist. v. City of Conroe*,

2

charged with regulating the water resources of the San Jacinto River Basin."[4] SJRA developed what it styled as a "Groundwater Reduction Plan" in response to rules promulgated by the Lone Star Groundwater Conservation District ("Lone Star").[5] Lone Star is a legislatively created entity with certain statutory authority under Chapter 36 of the Texas Water Code.[6] In 2008, Lone Star required all large-volume groundwater users—including the Cities—to develop and implement plans for reducing their usage substantially.[7] Mandatory groundwater-usage cutbacks took effect in January 2016.[8] In anticipation of the Lone Star cutbacks, SJRA developed a Groundwater Reduction Plan to draw surface water from Lake Conroe, treat the water, and sell it to large-volume users.[9] The Groundwater Reduction Plan developed by SJRA requires large volume groundwater users in Montgomery County to reduce the production of groundwater by thirty percent or be subject to financial penalties.[10] SJRA entered into Contracts ("GRP Contracts") with about eighty water-system operators ("Participants") in 2010, agreeing to provide them

515 S.W.3d 406, 410 (Tex. App.—Beaumont 2017, pet. dism'd by agr.) (hereinafter "*LSGCD*").

[4] *City of Conroe*, 602 S.W.3d at 448.

[5] *Id.*

[6] Act of May 17, 2001, 77th Leg., R.S. ch. 1321, 2001 Tex. Gen. Laws 3246-50.

[7] *City of Conroe*, 602 S.W.3d at 448.

[8] *Id.*

[9] *Id.*

[10] *Quadvest v. San Jacinto River Auth.*, No. 4:19-CV-4508, 2020 U.S. Dist. LEXIS 156144, at *4 (S.D. Tex. Aug. 14, 2020).

3

with surface water in exchange for monthly payments.[11] The Cities executed GRP Contracts with SJRA in 2010. Conroe's GRP Contract with SJRA runs through 2089, and Magnolia's GRP Contract runs through 2045.

SJRA asserts that it uses revenues from the Participants' payments to "pay down" the bonds SJRA used to finance the project. Although SJRA's enabling statute[12] empowers it to set rates sufficient to repay its bonds, this case is not about the bonds or funding for SJRA's projects. Rather, the issue before us involves the application of the Legislature's statutory waiver of immunity in Chapter 271.[13] Before we examine the application of the statute, we briefly review some of the underlying facts.

Underlying Facts

In 2015, SJRA began delivering water to the Cities under their respective GRP Contracts, and Lone Star's groundwater-usage cutbacks took effect in January 2016.[14] Several Participants, including the City of Conroe, filed a lawsuit against Lone Star in Montgomery County in 2015 challenging Lone Star's mandatory groundwater-usage cutbacks as unconstitutional and exceeding Lone Star's statutory

---

[11] *City of Conroe*, 602 S.W.3d at 448

[12] Act of May 25, 1967, 60th Leg., R.S., ch. 547, § 3(xviii), 1967 Tex. Gen. Laws 1212, 1214 (generally empowering SJRA to establish rates and other charges for water, water transmission, treatment, and related services and facilities).

[13] *See* Tex. Loc. Gov't Code Ann. §§ 271.151-.160.

[14] *Id.*

authority.[15] The trial court in that case ruled that Lone Star's rules requiring a reduction in groundwater usage "were adopted by [Lone Star] without legal authority and consequently are, and have been, unlawful, void, and unenforceable[.]" Lone Star initially appealed that ruling and then dismissed its appeal, and the trial court entered a Final Judgment declaring Lone Star's rules requiring a reduction in groundwater usage to be unlawful, void, and unenforceable.[16]

During certain years, Montgomery County has experienced very high rainfall amounts, which SJRA contends leads to a reduced demand for groundwater and a reduction in GRP revenues and funding.[17] SJRA promulgated a new rate order to be effective in 2017 (a high rainfall year) that increased the rates and charges for water under the GRP Contracts.[18] In response to the new increased rates, the Cities passed resolutions alleging that SJRA was overcharging for water in violation of the GRP Contracts and questioning the legitimacy of the entire GRP program.[19] SJRA then

---

[15] *See LSGCD*, 515 S.W.3d at 410 (In an interlocutory appeal of the trial court's rulings denying Lone Star's and its individual directors' pleas to the jurisdiction, we affirmed in part and reversed and remanded in part.).

[16] *See Lone Star Groundwater Conservation Dist.*, 2019 Tex. App. LEXIS 1089.

[17] In its First Amended Counterclaim and Cross-Claim, SJRA stated, "Wet years reduce participants' demand for water, lowering SJRA's GRP revenue and ability to pay project debt, fund operations, and maintain and replenish reserves."

[18] *See City of Conroe*, 602 S.W.3d at 449.

[19] *See id.*

filed a lawsuit in Travis County against certain "Participant cities," Conroe, Magnolia, and Splendora, alleging that the rate increase was justified and seeking declarations under the Expedited Declaratory Judgment Act ("EDJA").[20] Conroe, Magnolia, and Splendora filed pleas to the jurisdiction in the Travis County suit asserting governmental immunity.[21] The district court denied the cities' pleas to the jurisdiction, and the Austin Court of Appeals ruled for SJRA.[22] On petition for review to the Texas Supreme Court, the Court reversed in part and remanded, holding that:

> [T]he EDJA permits the trial court to exercise jurisdiction over SJRA's proposed Authority and Validity Declarations insofar as they concern the valid execution of the GRP contracts, but it does not confer jurisdiction over the proposed Compliance Declaration. We also hold that the Cities' governmental immunity does not bar this EDJA suit.[23]

Pleadings in the Trial Court

a.  Original Petition Filed by the Non-governmental Entities

The underlying case in this interlocutory appeal began in September 2019 when six privately-owned water and sewer utility companies, Quadvest, L.P., d/b/a Quadvest Water and Sewer Utility, Woodland Oaks Utility, L.P., Everett Square, Inc., E.S. Water Consolidators, Inc., Utilities Investment Co., Inc., and T&W Water

---

[20] *Id.*; *see also* Tex. Gov't Code Ann. §§ 1205.001-.152.
[21] *City of Conroe*, 602 S.W.3d at 450.
[22] *Id.*
[23] *Id.* at 458-59.

6

Service Company (collectively the "Non-governmental Plaintiffs"), filed suit against SJRA (the "Quadvest Suit").[24, 25] In their original petition filed against SJRA in the Quadvest Suit, the Non-governmental Plaintiffs asserted a claim against SJRA for breach of the GRP Contracts and alleged:

> SJRA breached the GRP Contracts by failing to comply with its contractual obligation to provide a reasonable allowance for Plaintiffs' costs of operating and maintain[ing] their groundwater wells, and therefore SJRA failed to comply with its obligation to set groundwater pumpage fees at a rate such that groundwater producers are neither benefitted nor penalized for relying on their groundwater resources. SJRA's failure to comply with this contractual obligation caused Plaintiffs' injuries by requiring Plaintiffs to pay exorbitantly high pumpage fees to SJRA for use of Plaintiffs' own groundwater.

---

[24] The Quadvest Suit was filed as trial cause No. 19-09-12611 in the 284th District Court for Montgomery County, Texas.

[25] Certain Participants (including Quadvest) also have litigation pending against SJRA about the GRP Contracts in federal court. In 2019, several private utility companies sued SJRA in federal district court alleging violations of federal antitrust law, seeking declaratory relief based on the illegality and unenforceability of their contracts with SJRA, and seeking injunctive relief to enjoin SJRA from enforcing the contracts. *Quadvest*, 2020 U.S. Dist. LEXIS 156144, at **1, 8. Plaintiffs argued in part that they had to sign contracts with SJRA to avoid the risk of penalty from violating the Lone Star Ground Water Reduction Management Plan, and a state court later entered a final judgment that Lone State lacked the legal authority to require Montgomery County users to reduce their groundwater consumption by thirty percent. *Id.* at **8, 28-29. SJRA filed a motion to dismiss the claims. *Id.* at *9. The federal district court denied SJRA's motion to dismiss. *Id.* at *30. On appeal, the Fifth Circuit affirmed the district court's denial based on state-action immunity and explained that SJRA's enabling statute that authorized it to participate in the market did not constitute authority to monopolize that market. *Quadvest, L.P. v. San Jacinto River Auth.*, 7 F.4th 337, 347-48 (5th Cir. 2021).

The Non-governmental Plaintiffs are not a party to this appeal. We mention their claim solely to explain the context of the pleadings filed by SJRA against the Cities in the Quadvest Suit.

    b.  <u>SJRA's Claims Against the Cities</u>

In March 2020, SJRA filed an Original Counterclaim and Cross-Claim in the Quadvest Suit.[26] The Cities filed pleas to the jurisdiction and answers subject to the pleas to the jurisdiction, and First Amended Pleas to the Jurisdiction and answers. SJRA then filed a First Amended Counterclaim and Cross-Claim against the Cities. SJRA's original and first amended cross-claims named the Cities as "cross-defendants."[27] SJRA sought declaratory relief and also asserted a breach of contract claim against the Cities. SJRA requested damages, attorney's fees and costs. SJRA's original cross-claim against the Cities did not plead a waiver of immunity, but in its Amended Counterclaim and Cross-Claim, SJRA pleaded that governmental

---

[26] SJRA filed its counterclaim and what it styled as it's original "cross-claim" alleging for the first time claims against the Cities. At that time, the Cities were not parties to the Quadvest Suit that had been filed by the Non-governmental Plaintiffs against SJRA. As to SJRA's claims against the Cities, the original pleading SJRA filed against the Cities should have been styled as a third-party claim because the Cities were not parties to the Quadvest Suit. For purposes of resolving the issues now before us we will continue to refer to SJRA's pleadings against the Cities as "cross-claims." The cross-claims were filed by SJRA on March 27, 2020, in the Montgomery County Quadvest Suit—the same day the Texas Supreme Court issued its opinion in the appeal of the Travis County lawsuit in *City of Conroe*. *See* 602 S.W.3d at 448.

[27] The original cross-claim also named the City of Splendora as a cross-defendant. In its amended cross-claim, SJRA non-suited the City of Splendora.

immunity was waived under the common law, under section 11.05 of the GRP Contracts, and under section 271.152 of the Texas Local Government Code.

In its original counterclaim and cross-claim, SJRA asserted a claim for breach of contract and declaratory judgment against all Plaintiffs and the Cities, seeking a judicial declaration "that SJRA's fees, rates, and charges for fiscal years 2017, 2018, 2019, and 2020 comply with the GRP Contracts." After the Cities filed their Original and First Amended Pleas to the Jurisdiction, SJRA filed its First Amended Cross-Claim. Therein, in paragraph 2, SJRA described the "Nature of the Action" as a "Counterclaim and Cross-Claim for declaratory relief and breach of contract relating to the parties' rights and obligations under contracts between each of the Plaintiffs/Counter-Defendants and Cross-Defendants[,]" and it alleged that each of the "contract counterparties in this lawsuit have and continue to claim that SJRA's fees, rates, and charges…are not in compliance with the GRP Contracts[;]" that each of the "Plaintiffs/Counter-Defendants and Cross-Defendants" have either "refused to pay SJRA's rates" or "have disputed those rates" as not in compliance with the GRP Contracts; that "[a] real, substantial, and ju[st]iciable controversy exists between the parties concerning the compliance of SJRA's rates with the GRP Contracts[;]" and that "the Cities [] breached their GRP contracts with SJRA, for which SJRA seeks damages and other relief." Further, in paragraph 28 of the First Amended counterclaim and cross-claim, SJRA alleged:

9

28. In the years since Conroe's and Magnolia's refusal to pay the fiscal year 2017 rate, the Cities and the Utilities have disputed SJRA's compliance with the GRP Contract in setting the rates for fiscal years 2017, 2018, 2019, and 2020. A real, substantial, and ju[st]iciable controversy exists between the parties concerning the compliance of SJRA's rates with the GRP Contracts. Moreover, Conroe and Magnolia have in fact failed to pay the rates set for fiscal years 2017, 2018, 2019, and 2020.

In subsequent paragraphs of SJRA's First Amended counterclaim and cross-claim, it labeled its first cause of action as a "Declaratory Judgment Against All Counter-Defendants[,]" and it labeled its second cause of action as a "Breach of Contract—Against the [Cities.]" In paragraphs 33 through 35, SJRA described its second cause of action by first realleging the "material facts alleged in the preceding paragraphs[,]" and further alleged that "SJRA performed under the respective GRP Contracts[,]" that the Cities "breached their respective contracts[,]" and that the Cities conduct constituted a "Payment Default."

c.  The Cities' Pleas to the Jurisdiction

In the Cities' Pleas to the Jurisdiction, the Cities asserted governmental immunity. First, the Cities argued that the waiver of immunity in section 271.152 does not apply because SJRA failed to engage in mandatory mediation after the Cities gave notice demanding mediation. According to the Cities, the essence of SJRA's cross-claim against the Cities is "whether [SJRA] has committed a performance default by breaching or violating its obligations under the GRP Contracts as to the fees, rates, and charges it seeks to collect from the Cities." The

10

Cities argued that section 11.02 of the GRP Contract requires pre-suit mediation for claims of performance default. The Cities expressly alleged that section 271.154 of the Local Government Code requires pre-suit alternative dispute resolution and limits the scope of the waiver in section 271.152.

Second, the Cities argued that the fees on which SJRA based its claim for damages are not set forth in the GRP Contracts but rather in Rate Orders that the Cities have not executed. According to the Cities, section 271.152 does not waive immunity for SJRA's cross-claim for nonpayment of "'fees, rates and charges' set forth only in SJRA's unilaterally-released 'Rate Orders.'" Because the GRP Contracts do not include the rates on which SJRA's claim for damages is based, the Cities contend the GRP Contracts fail to state "the essential terms of the agreement," they do not meet the definition of a "contract subject to this subchapter" in section 271.151(2)(A), and there is no waiver of immunity from suit under section 271.152. The Cities also argued that, to bring its claims against the Cities, SJRA must first establish that it has performed without default and prove that the Rate Orders that sought a unilateral increase in fees, rates, and charges were not "contrary to, inconsistent with, or prohibited by" the GRP Contracts.

The Cities explained as well that the GRP Contracts were intended only to ensure the Participants' compliance with the Lone Star regulations that have now been found to be "unlawful, void, and unenforceable." According to the Cities, the

11

Cities "as a whole no longer need[] any volume of water to comply with [Lone Star's] 'unlawful, void, and unenforceable' regulations and 'mandate[,]'" and specifically "there is no way to calculate the volume of treated surface water Conroe is legally obligated to purchase each month or year from SJRA under Conroe's GRP Contract, unless that volume is zero."

    d. <u>SJRA's Response to the Pleas to the Jurisdiction</u>

Responding to the Cities' pleas to the jurisdiction, SJRA argued that the Cities' immunity is expressly waived under section 11.05 of the GRP Contracts, which reads:

> <u>Section 11.05</u>: <u>Waiver of Governmental Immunity</u>. The Authority and Participant agree that this Contract constitutes an agreement for the provision of goods and services and is subject to the provisions of the Subchapter I, Chapter 271, Texas Local Government Code, as amended, and any successor statute. In accordance with Sections 271.152 and 271.153 thereof, and as between the Parties, the Parties hereby waive and acknowledge waiver of all constitutional, statutory, or common law rights to sovereign or governmental immunity from liability or suit and expressly consent to be sued and to be liable to the limited extent necessary for a Party to enforce this Contract against the other Party….

SJRA alleged the Cities' immunity is waived under section 271.152 because the Cities expressly agreed that the GRP Contracts are subject to Chapter 271 and "the GRP Contracts contain the essential terms of the parties' agreement for goods or services and were properly executed on the Cities' behalf."

12

In addition, SJRA argued that the GRP Contracts only require mediation for a Performance Default and not a Payment Default,[28] and section 11.02 of the GRP Contracts provides in relevant part:

> Section 11.02: <u>Default and Remedies</u>. (a) Default shall occur in the event either Party (i) fails to timely pay any fees, rates, charges, or other amounts due hereunder ("<u>Payment Default</u>"), or (ii) fails to perform or is in breach or violation of any of its other obligations hereunder ("<u>Performance Default</u>").

After a hearing on the pleas to the jurisdiction,[29] the trial court signed an order granting the Cities' pleas to the jurisdiction and dismissing with prejudice SJRA's claims against the Cities. SJRA filed a motion to reconsider, and the Cities

---

[28] SJRA also alleged that the 98th District Court in Travis County rejected the Cities' argument that the parties must mediate this Payment Default. In the Travis County litigation, the Cities filed pleas in abatement in which they argued that SJRA's claims against them for failure to pay required pre-suit mediation. After a hearing, the Travis County district court denied the Cities' pleas in abatement by order signed on November 17, 2016. SJRA did not argue that the Cities were barred from challenging the Travis County district court's order based on collateral estoppel or res judicata in this case. As to SJRA's argument that judicial estoppel bars the Cities' claims of governmental immunity, SJRA did not make this argument in the trial court, and so, it failed to preserve error on this point.[28] Moreover, the Texas Supreme Court has explained that "[a] party cannot by his own conduct confer jurisdiction on a court when none exists otherwise." *Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294 (Tex. 2001); *see also In re Crawford & Co.*, 458 S.W.3d 920, 928 n.7 (Tex. 2015) (explaining that the doctrine of judicial estoppel cannot create subject-matter jurisdiction where it does not otherwise exist).

[29] SJRA also filed an Opposed Motion to Sever its claims against the Cities from the claims with Quadvest and other Non-governmental Plaintiffs. SJRA argued that its disputes with the Non-governmental Plaintiffs and with the Cities involve different breaches and resulting damages, and that any judgment involving the Plaintiffs would have no impact on its dispute with the Cities. The trial court denied the Motion to Sever.

responded.[30] The trial court denied the motion to reconsider, and SJRA timely filed a notice of appeal challenging the trial court's order granting the Cities' pleas to the jurisdiction.

## Issue on Appeal

SJRA contends the trial court erred by granting the Cities' pleas to the jurisdiction which were based on governmental immunity. SJRA requests that this Court reverse and remand. SJRA groups its arguments into five statements it calls "issues," but we consider all points as one issue: Whether the trial court erred in granting the Cities' pleas to the jurisdiction based on governmental immunity?

## Discussion

The enforceability of the GRP Contracts is a separate inquiry from whether SJRA has met the statutory test for a waiver of immunity.[31] Parties to a contract with

---

[30] SJRA argued that SJRA and related entities have issued millions in bonds to finance this and other projects that are then paid for by SJRA from the proceeds under the GRP Contracts. SJRA contends it would be devastating to it and other utility and water supply entities if the court held that these type of long-term supply contracts fail because they lack "essential terms." In their response to SJRA's motion to reconsider, the Cities noted that ten of the thirteen water contracts SJRA attached to its motion to reconsider were from the 1970s and before the Legislature enacted section 271.152. The Cities also argued that it is immaterial what other contracts may state or that bonds have been issued to finance the project because this dispute is governed by the Cities' GRP Contracts and applicable legal standards pertaining to the Cities' governmental immunity.

[31] *See W. Travis Cty. Pub. Util. Agency v. Travis Cty. Mun. Util. Dist. No. 12*, 537 S.W.3d 549, 557 (Tex. App.—Austin 2017, pet. denied) ("[T]he issue here is not the enforceability of the Services Contract, but, rather, whether the contract meets the explicit requirements of the Act[.]"); *see also ICI Constr., Inc. v.*

14

a governmental entity may not contractually waive immunity from a breach of contract suit, because only the Legislature may waive a political subdivision's immunity from suit.[32]

Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages.[33] Governmental immunity protects political subdivisions of the State, like counties, cities, and school districts.[34]

We interpret statutory waivers of sovereign immunity narrowly, as the Texas Legislature's intent to waive immunity must be clear and unambiguous.[35] Without an express waiver of governmental immunity, Texas courts do not have subject-matter jurisdiction over suits against political subdivisions of the State.[36]

---

*Orangefield Indep. Sch. Dist.*, 339 S.W.3d 235, 238 (Tex. App.—Beaumont 2011, no pet.) (The statutory waiver of immunity in section 271.152 of the Texas Local Government Code "waives the immunity of local government entities that are authorized to make contracts 'subject to this subchapter.'").

[32] *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 858 (Tex. 2002) (rejecting waiver of immunity by contract argument and noting that waivers of immunity from suit are made only by the Legislature).

[33] *Id.* at 853.

[34] *See Ben Bolt-Palito Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323-24 (Tex. 2006).

[35] *See* Tex. Gov't Code Ann. § 311.034 (immunity waivers must be "effected by clear and unambiguous language"); *Tooke v. City of Mexia*, 197 S.W.3d 325, 333 (Tex. 2006) ("a waiver of immunity must be clear and unambiguous"); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003) (any waiver of immunity must be construed in favor of retaining immunity).

[36] *See* Tex. Gov't Code Ann. § 311.034; *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 224-

SJRA initially argues that the GRP Contracts do not require pre-suit mediation of their claims against the Cities because they have only alleged a payment default, so the absence of mediation does not limit the Cities' waiver of immunity under section 271.152. According to SJRA, the GRP Contracts only require mediation for a "performance default" and not for a payment default and "[t]here is no reference anywhere in the GRP Contracts to mediating Payment Defaults." SJRA also argues that, in the EDJA suit in Travis County, the district court rejected the Cities' argument that the parties must mediate the alleged payment default, citing to the district court's order denying the Cities' pleas to the jurisdiction.[37]

SJRA alleges that section 11.02 of the GRP Contracts contains language that mentions Payment Default and Performance Default and provides that a "Payment Default" occurs if either party "fails to timely pay any fees, rates, charges, or other amounts due hereunder" and a "Performance Default" occurs if either party "fails to perform or is in breach or violation of any of its other obligations hereunder[.]" Section 11.02 also provides:

> …In the event of a Payment Default, notice of such default and the time for institution of proceedings for collection of any amounts due shall be given and conducted in the manner provided in this Contract, the applicable provisions of the Rate Order, any other order of the

---

25 (Tex. 2004); *San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 581 S.W.3d 245, 254 (Tex. App.—San Antonio 2017), *aff'd*, 601 S.W.3d 616, 625 (Tex. 2020).

[37] In its order of November 17, 2016, the Travis County district court denied the Cities' Motions to Transfer Venue, Pleas to the Jurisdiction, and Pleas in Abatement without giving any findings of fact or conclusions of law.

Authority relating thereto, and applicable law. In the event of a Performance Default, the non-defaulting Party shall give the defaulting Party written notice describing such default and demanding cure of such default.

[] Should a Performance Default not be fully cured within a reasonable time, but not more than sixty (60) days after notice of default has been given to the defaulting Party, or should the defaulting Party deny or dispute such default, the Parties agree to submit such dispute to non-binding mediation in accordance with the provisions of Section 11.03 hereof; provided, however, that either Party may seek injunctive relief, and only injunctive relief, prior to such mediation in order to preserve the status quo or to prevent irreparable harm; provided, however, a Party may commence litigation if same could be barred within sixty (60) days by an applicable law or statute of limitations.

[] Upon conclusion of mediation proceedings or in the event of failure by a defaulting party to mediate timely and in good faith, then except as provided in Section 11.04 hereof, the non-defaulting Party may pursue any and all remedies existing at law and in equity from any court, agency or other entity with jurisdiction over the subject matter at such time.

We construe pleadings and unambiguous contract terms as a matter of law.[38]

Although SJRA argues that its claims against the Cities are merely for a payment default, its *pleadings* tell a different story. In SJRA's breach of contract claim against the Cities, SJRA alleged that the Cities "breached their respective GRP contracts by *refusing to pay the GRP rates* adopted in accordance with their GRP contracts." (emphasis added). SJRA also stated, "[t]here is a real and substantial ju[st]iciable

---

[38] *See In re Freestone Underground Storage, Inc.*, 429 S.W.3d 110, 114 n.9 (Tex. App.—Texarkana 2014, orig. proceeding) (citing *Hendee v. Dewhurst*, 228 S.W.3d 354, 368 (Tex. App.—Austin 2007, pet. denied); *Guerrero v. Guerra*, 165 S.W.3d 778, 782 (Tex. App.—San Antonio 2005, no pet.)).

controversy between the parties over their respective rights and obligations under the GRP Contract. [] Accordingly, [] SJRA seeks a judicial declaration that SJRA's fees, rates, and charges for fiscal years 2017, 2018, 2019, and 2020 comply with the GRP Contracts." Also, SJRA asserted that "[a] real, substantial, and ju[st]iciable controversy exists between the parties *concerning the compliance of SJRA's rates with the GRP Contracts*." (emphasis added). In other words, SJRA's claims include performance defaults and payment default allegations and include a claim for a judgment that its fees, rates and charges comply with the terms of the GRP Contracts and seek a declaration that SJRA complied with "other obligations" in the GRP Contracts. We conclude that the essence of the claims asserted by SJRA and allegations between the parties include breach of contract claims and performance default allegations, and the matter seeks relief that falls outside of the definition of a mere "payment default." Even after resolving doubts in favor of the nonmovant,[39] we conclude that the requirement for pre-suit mediation in section 11.02 of the GRP Contracts was triggered because that requirement applies to the allegations contained in SJRA's pleadings which include an alleged Performance Default.

SJRA also argues that, even if mediation were required by the GRP Contracts, section 271.154[40] allows the Cities to enforce that requirement, but it does not limit

---

[39] *See Miranda*, 133 S.W.3d at 228.
[40] Section 271.154 provides as follows:

the waiver of immunity under section 271.152. We disagree. According to SJRA, the Texas Supreme Court has stated that section 271.154 is an authorization—but not a limitation—to local governments to agree to arbitration. SJRA cites to *San Antonio River Authority* for this proposition, but we find the holding in that case to be inapposite to the facts in our case.[41] Rather, we find the analysis in *Zachry Construction Corp. v. Port of Houston Authority*, to be controlling.[42] In *Zachry*, the

---

> Adjudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit or an arbitration proceeding, that are stated in the contract subject to this subchapter or that are established by the local governmental entity and expressly incorporated into the contract or incorporated by reference are enforceable except to the extent those procedures conflict with the terms of this subchapter.

Tex. Loc. Gov't Code Ann. § 271.154. Section 271.151 does not define "alternative dispute resolution," but the Texas Alternative Dispute Resolution Act defines it as "an informal forum in which mediation, conciliation, or arbitration is used to resolve disputes[.]" *See* Tex. Civ. Prac. & Rem. Code Ann. § 152.001.

[41] *See San Antonio River Auth.*, 601 S.W.3d at 625 (The question before the Court on appeal did not focus on the waiver of immunity by a governmental entity as set forth in the Statute. Rather, it focused on the authority of a governmental entity to enter into binding arbitration. The majority explained that section 271.154 gives local governments permission to agree to binding arbitration in contracts within Chapter 271's scope stating, "Section 271.154 does not contemplate adjudication procedures that *may* be enforceable; it declares they '*are* enforceable except to the extent those procedures conflict with the terms of this subchapter.'") (quoting Tex. Loc. Gov't Code Ann. § 271.154). The Court held that the River Authority had the authority to engage in binding arbitration, and that a court, and not an arbitrator, must determine whether immunity was waived and that no additional authorization from the Legislature was required to enable the River Authority to engage in binding arbitration. *Id.* at 618, 621, 624-25. The dissent disagreed that the Legislature had granted the River Authority the authority to engage in binding arbitration. *Id.* at 632 (Boyd, J., dissenting).

[42] 449 S.W.3d 98, 106 (Tex. 2014).

Supreme Court interpreted the scope of the Local Government Contract Claims Act's waiver of immunity for contract suits against local governmental entities. Subsection 271.152 of the Act expressly "waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter."[43] The Court noted that the phrase "subject to the terms and conditions of this subchapter" in section 271.152 expressly references the terms and conditions that "are found in the Act's other nine sections."[44] In its discussion, the Court specifically mentioned each of the other nine sections, sections 271.153-160.[45] The Court concluded that section 271.153, like the other provisions of the Act, "define the scope of [section 271.152's] waiver of immunity."[46] Applying *Zachry*'s reasoning here, we conclude that section 271.152's waiver is limited by section 271.154.

Section 271.152 expressly states that the waiver of immunity is "subject to" the terms and conditions of the Act, so the other provisions in the Act are limitations on the waiver of immunity set forth in 271.152.[47] Section 271.154 is one of the

---

[43] Tex. Loc. Gov't Code Ann. § 271.152.

[44] 449 S.W.3d at 106.

[45] *Id*. at 107.

[46] *Id*. at 108.

[47] *See also Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 706 (Tex. 2019) (explaining that the phrase "subject to" in section 271.152 "incorporates the other provisions of the Act to define the scope of its waiver of immunity[]") (quoting *Zachry Constr. Corp.*, 449 S.W.3d at 108).

limitations in the Act, and "to show waiver of immunity, a claimant must plead facts showing that the conditions of section 271.154 have been met."[48] In this case, SJRA has failed to plead facts showing that conditions of section 271.154 have been met. Notably, SJRA failed to plead that it gave the notice required under section 11.02 of the GRP Contracts, and it failed to allege facts that it engaged in mediation as provided for in the GRP Contracts.

We conclude that section 271.154 is a limitation on the waiver of immunity in this lawsuit.[49] SJRA failed to plead facts showing compliance with the required pre-suit mediation outlined in the GRP Contracts and failed to meet the requirements of subsection 271.154. We find this issue to be dispositive and need not address whether the GRP Contracts contain "essential terms."[50] We expressly do not reach

---

[48] *See Mission Consol. Indep. Sch. Dist. v. ERO Int'l, LLP*, 579 S.W.3d 123, 128 (Tex. App.—Corpus Christi-Edinburg 2019, no pet.) ("[T]o show waiver of immunity, a claimant must plead facts showing that the conditions of section 271.154 have been met."); *see also* Tex. Gov't Code Ann. § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

[49] *See* Tex. Gov't Code Ann. § 311.034; *Zachry Constr. Corp.*, 449 S.W.3d at 108; *Mission Consol. Indep. Sch. Dist.*, 579 S.W.3d at 128. In *Mission Consolidated ISD*, the Corpus Christi Court applied the Supreme Court's analysis in *Zachry* to reject earlier cases from other Courts of Appeals that came to a different conclusion. 579 S.W.3d at 128-29 (rejecting *Tex. Mun. League Intergovernmental Risk Pool v. City of Abilene*, 551 S.W.3d 337 (Tex. App.—Eastland 2018, pet. dism'd); *Romulus Grp., Inc. v. City of Dallas*, No. 05-16-00088-CV, 2017 Tex. App. LEXIS 4011 (Tex. App.—Dallas May 2, 2017, pet. denied) (mem. op.)).

[50] *See* Tex. R. App. P. 47.1.

the merits of any of the underlying claims or defenses between the parties.[51]

Therefore, we affirm the trial court's decision.

### Conclusion

For all these reasons, we conclude that the trial court did not err in granting the pleas to the jurisdiction. We decline to address any of Appellant's remaining points because they are unnecessary to our disposition.[52] We affirm the trial court's order.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on June 22, 2021
Opinion Delivered April 21, 2022

Before Golemon, C.J., Kreger and Johnson, JJ.

---

[51] *See Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Hocevar v. Molecular Health, Inc.*, 593 S.W.3d 764, 768 (Tex. App.—Beaumont 2019, no pet.).
[52] *See* Tex. R. App. P. 47.1.

22